IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02691-RM-KLM

EDGAR NELSON PITTS,

      Plaintiff,

v.

ANDRE MATEVOUSIAN, in his official capacity as Warden,
FREDERICK FRANDLE, in his official capacity as Hearing Administrator, and
UNKNOWN PSYCHOLOGIST,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendants' **Motion to Dismiss** [#38][1] (the "Motion"). Plaintiff, who proceeds as a pro se litigant,[2] filed a Response [#49] in opposition to the Motion [#38], Defendants filed a Reply [#52], and Plaintiff filed a Surreply [#54].[3] Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1(c), the Motion

_____

[1] "[#38]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). In addition, a pro se litigant must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[3] Plaintiff did not file a motion seeking leave to file the Surreply [#54], and he did not show in his Surreply that the Surreply was necessary because Defendants relied on new material in

1

[#38] has been referred to the undersigned for a recommendation regarding disposition. *See* [#39]. The Court has reviewed the briefs, the case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court **RECOMMENDS** that the Motion [#38] be **GRANTED**.

## I. Background[4]

Plaintiff initiated this action in the Eastern District of California on July 29, 2019. *See Compl.* [#1]. More than a year later, on September 4, 2020, his case was transferred to the District of Colorado, *see* [#25], where the Court ordered Plaintiff to cure the deficiencies in his Complaint [#1] within thirty-days or the action would be dismissed, *see Order Directing Plaintiff to Cure Deficiencies* [#27]. Subsequently, on September 25, 2020, Plaintiff filed the Amended Complaint [#28], which is now the operative complaint. Plaintiff brings one claim, i.e., that Defendants Andre Matevousian ("Matevousian"), Frederick Frandle ("Frandle"), and an "Unknown Psychologist" violated Plaintiff's First Amendment rights by retaliating against him for filing a grievance against Defendant Matevousian. *Am. Compl.* [#28] at 8. Plaintiff seeks "injunctive and declaratory relief to be immediately released from solitary confinement" at the United States Penitentiary— Administrative Maximum ("ADX") in Florence, Colorado. *Id.* at 6.

---

their Reply [#52]. *See Green v. New Mexico*, 420 F.2d 1189, 1196 (10th Cir. 2005). Nevertheless, the Court has reviewed and considered Plaintiff's Surreply in connection with adjudication of the Motion [#38].

[4] For purposes of resolving the Motion [#38], the Court accepts as true all well-pled, as opposed to conclusory allegations made in Plaintiff's Amended Complaint [#28]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plaintiff was originally a prisoner at the United States Penitentiary—Atwater ("Atwater") in Atwater, California, where Defendant Matevousian served as Warden. During his time at Atwater, Plaintiff engaged in a "fight that resulted in the death of Plaintiff's cellmate" in July 2011. *Id.* at 8. Thereafter, Plaintiff was placed in the Special Housing Unit ("SHU") at Atwater from 2011 until he was transferred to ADX in Florence, Colorado, in July 2016. *Id.* at 10, 13.

From Plaintiff's murky timeline in the Amended Complaint [#28], it appears that Plaintiff was first set to be referred for transfer to the ADX at an unspecified time in 2015, but a psychological evaluation conducted in July 2015, assessing his five years in the SHU at Atwater, allegedly caused the transfer referral to be cancelled. *Id.* at 8. After this evaluation was conducted, Defendant Matevousian allegedly presented Plaintiff with an ultimatum of either volunteering to enroll in the "Secure Mental Health Stepdown Program" (the "Stepdown Program") or being held in SHU "indefinitely" at Atwater. *Id.* When Plaintiff refused to join the Stepdown Program, Defendant Matevousian allegedly insisted that Plaintiff join the "unverified (P.C.) protective custody" program, which Plaintiff also refused. *Id.*

Plaintiff alleges that Defendant Matevousian violated an unidentified policy by attempting to keep him in the SHU indefinitely. *Id.* at 9. Because of the alleged policy violation, Plaintiff states that he was "reluctant to pursue administrative remed[ies]" so as to not "further become a target of Defendant Matevousian's reprisal." *Id.* However, Plaintiff alleges that he was then "encouraged by prison officials to file a 'Sensitive Nine'

3

. . . ."[5]  *Id.*  Plaintiff asserts that he has a "First Amendment right to file the 'Sensitive Nine'

. . . to challenge Defendant Matevousian's threat to hold Plaintiff in the SHU indefinitely."

*Id.* at 9.

Plaintiff filed a "Sensitive Nine" against Defendant Matevousian in January 2016

while still at Atwater.  *Id.*  After Plaintiff filed the "Sensitive Nine," Plaintiff alleges that

Defendant Matevousian "abused his authority and discretion" by undermining the July

2015 "psychological report that precluded Plaintiff from placement in the ADX[,]" therefore

allowing Plaintiff to be referred for transfer to the ADX a second time.  *Id.*  Plaintiff alleges

that this "amounts to retaliation" by Defendant Matevousian.  *Id.* at 10.

From the time Plaintiff filed the "Sensitive Nine" to when Plaintiff allegedly learned

that he was being referred to be transferred to the ADX again "was about 3 weeks."  *Id.*

When Plaintiff asked Defendant Matevousian at an unspecified time about a "rumor" that

he was being scheduled for another hearing regarding the transfer to ADX, Defendant

Matevousian allegedly "confirmed sarcastically that he did 'made [sic] some calls, talked

to some people and got them to get rid of that psychological report.'"  *Id.*  Plaintiff alleges

that, after learning of his second referral to the ADX, an unidentified psychologist

"convinced Plaintiff . . . [to] enroll" in the Stepdown Program.  *Id.*  However, Plaintiff alleges

that he was denied entry into the Stepdown Program, and a psychologist (it is unclear

whether this is the same psychologist who convinced Plaintiff to enroll in the Stepdown

---

[5] Although not explained in the Amended Complaint [#28], a "Sensitive Nine" is, according to Defendants, a grievance an inmate can file "directly to the appropriate Regional Director" for sensitive issues, such as if an "inmate's safety or well-being would be placed in danger" if the grievance became known at the institution.  *Motion* [#38] at 5 n.3.

4

Program) "decided to be persuaded by Defendant Matevousian to undermine the psychology report" that allegedly prevented his first transfer to ADX. *Id.* Plaintiff further alleges that this unspecified "retaliation and interference by Defendant Matevousian" denied Plaintiff's placement in the Stepdown Program and led to the scheduling of the second ADX referral hearing. *Id.* at 11.

After being denied entry into the Stepdown Program, Plaintiff alleges that previous restrictions were reimposed which prevented Plaintiff from having a cellmate, participating in group recreation, and being a SHU orderly. *Id.* However, the Amended Complaint [#28] does not clarify when these restrictions were originally imposed or removed. Plaintiff further alleges that he had not incurred any new infractions and that his "only conduct" during this time was filing the "Sensitive Nine," which, Plaintiff believes, must be the reason that Defendant Matevousian allegedly retaliated against him. *Id.*

Defendant Frandle was the administrator for Plaintiff's ADX referral hearing held on April 16, 2016. *Am. Compl.* [#28] at 13. During the hearing, three prison staff members made oral or written statements on Plaintiff's behalf, essentially describing a lack of incidents since Plaintiff's fight with his cellmate in July 2011. *Id.* at 11-12. Plaintiff also made a statement that he had "been doing everything possible to better" himself. *Id.* at 12. In the subsequently issued "Control Unit Hearing Administrator's Report" (the "Report"),[6] Defendant Frandle stated that "the psychologist provided a memorandum

---

[6] Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, a Court may consider documents outside of the complaint on a motion to dismiss in three instances. First, the Court may consider outside documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Pringle v. United States*, 208 F.3d

indicating the inmate had no serious mental health issues which preclude his placement in the ADX control unit." *See* [#38-1] at 16.  However, despite this explicit statement in the Report, Plaintiff alleges that, when Defendant Frandle wrote his Report, he "clearly omitted" the July 2015 psychological report in order to "accommodate Defendant Matevousian's retaliation against Plaintiff." *Am. Compl.* [#28] at 11.  Ultimately, Plaintiff's transfer to ADX was approved, of which he was notified on May 9, 2016.  *Id.*  Plaintiff then filed an appeal in accordance with the notice of his transfer, but on July 7, 2016, Plaintiff "was received at the ADX in Florence, Colorado." *Id.*

Plaintiff asserts that the Court has jurisdiction over his claim under "28 U.S.C. § 1331, 5 U.S.C. § 702 or 28 U.S.C § 1361." *Id.* at 3.  In the present Motion [#38], Defendants argue that, to the extent Plaintiff's claim is brought under the 5 U.S.C. § 702, i.e., the Administrative Procedure Act ("APA"), it should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction. *Motion* [#38] at 1.  Additionally, Defendants argue that, if "Plaintiff intends to plead a constitutional claim pursuant to the First Amendment," that claim should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim. *Id.* at 2.  In the Response [#49], Plaintiff argues that, if the Court lacks jurisdiction

---

1220, 1222 (10th Cir. 2000).  Second, the Court may consider outside documents subject to judicial notice, including court documents and matters of public record. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). Third, the Court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in his complaint. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).  Defendant Frandle's "Control Unit Hearing Report" [#38-1] falls into the third category because Plaintiff specifically mentions and relies on this document in his Amended Complaint [#28], and therefore the Report is properly considered by the Court. *See* [#28] at 13.

pursuant to 5 U.S.C. § 702, then jurisdiction is proper under either 28 U.S.C. §§ 1331 or 1361 instead.  *Response* [#49] at 10.  Plaintiff further argues that he has properly stated a claim for which relief may be granted.  *See id.*

## II.  Standard of Review

### A.    Rule 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it.  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(1).  Statutes conferring subject matter jurisdiction on federal courts are to be strictly construed.  *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true.  *Id.*  By contrast, with a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends.  *Id.* at 1003.  When reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations."  *Id.* at 1003.  The Court therefore must make its own findings of fact.  *Id.*  In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing."  *Id.*

7

(citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).

**B.      Rule 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations" (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual

8

enhancement." *Id.* (brackets in original; internal quotation marks omitted).  That said, "[s]peculative facts are not necessary; the statement need only give the defendant fair notice of what the. . . claim is and the grounds upon which it rests"; the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik v. United Airlines*, 671 F.3d 1188, 1190 (10th Cir. 2012).  To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] [ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a).  *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

**A.    Rule 12(b)(1)**

Defendant argues that, insofar as Plaintiff brings his claim under the APA, the Court lacks jurisdiction to adjudicate such a claim, and therefore the Court should dismiss the claim pursuant to Fed. R. Civ. Pro. 12(b)(1).  *Motion* [#38] at 8.  Specifically, Defendant argues that it appears Plaintiff is "seeking review of the [Bureau of Prisons' ("BOP")] decision to transfer him to the ADX pursuant to the APA," but "the Court lacks jurisdiction to adjudicate the claim pursuant to 18 U.S.C. § 3625 . . . ."  *Id.*  Plaintiff responds that Defendants' "APA claim is not valid" but provides no legal support for his opposition. *Response* [#49] at 10.  As explained below, the Court agrees with Defendant that, to the

extent Plaintiff's claim is asserted under the APA, the Court lacks jurisdiction to adjudicate the claim.

Defendants cite *Lyle v. Sivley*, 805 F. Supp. 755, 759 (D. Ariz. 1992), for the proposition that, "[i]n enacting section 3625, Congress intended to 'carve out' an area of decision making committed solely to agency discretion and not subject to judicial review." *Motion* [#38] at 9.  Defendant also cites *Standifer v. Ledezma*, 653 F.3d 1276, 1279 (10th Cir. 2011), for its conclusion that "federal courts lack jurisdiction to hear claims . . . seeking APA review of BOP decisions regarding institutional transfer."  *Motion* [#38] at 9.  Both *Standifer* and *Lyle* held that the court may review BOP decisions to make sure the BOP has not exceeded its statutory authority.  *Standifer*, 653 F.3d at 1279 n. 3; *Lyle*, 805 F. Supp. at 760.  Here, however, Plaintiff is only asserting that Defendants violated the First Amendment by retaliating against him for filing a grievance against Defendant Matevousian, *Am. Compl.* [#28] at 8; Plaintiff is not arguing that the transfer exceeded Defendants' statutory authority.  Thus, this exception to the bar on judicial review does not apply here.

"[T]he APA does not itself confer subject matter jurisdiction.  Rather, the source of jurisdiction must be found elsewhere, such as in the general federal question statute, 28 U.S.C. § 1331 (granting federal district courts jurisdiction over 'all civil actions arising under the Constitution, laws or treaties of the United States')."  *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1080 n.4 (10th Cir. 2006) (internal citation omitted). Indeed, *Lyle* also held that the court could review the petitioner's Community Corrections Center placement "to the extent he allege[d] that respondent ha[d] violated the constitution . . . ."  805 F. Supp. at 760.  Thus, here, the Court finds that it has jurisdiction

10

over Plaintiff's claim for violation of the First Amendment through 42 U.S.C. § 1983 under 28 U.S.C. § 1331, i.e., federal question jurisdiction.

Thus, to the extent Plaintiff asserts the Court has jurisdiction over Plaintiff's claim under the APA, the Court **recommends** that the Motion [#38] be **granted** and this aspect of Plaintiff's claim be **dismissed without prejudice**. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("[W]here the district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice."). However, the Court finds that it has jurisdiction over Plaintiff's constitutional claim pursuant to 28 U.S.C. § 1331, because Plaintiff claims that Defendants violated his First Amendment rights, and the Court therefore proceeds to the remainder of Defendants' argument under Rule 12(b)(6). *Am. Compl.* [#28] at 3, 8.

**B.     Rule 12(b)(6)**

Defendants argue that Plaintiff has failed to provide sufficient allegations to state a First Amendment retaliation claim against either Defendant Matevousian or Defendant Frandle. *Motion* [#38] at 1.

A plaintiff may state a First Amendment retaliation claim by alleging the following three elements: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero*, 510 F.3d at 1203. Additionally, to state a plausible First Amendment retaliation claim, a plaintiff must also allege facts showing that "but for the retaliatory motive," the complained-of actions "would not have taken place."

Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998).   "[A]n inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."   *Id.*   Further, prisoner retaliation claims are viewed with "skepticism because every act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct . . . ."   *Hyberg v. Enslow*, No. 18-cv-00014-RM-NRN, 2019 WL 979026, at *7 (D. Colo. Feb 28, 2019) (internal brackets omitted).

Neither Defendant argues that Plaintiff has failed to adequately allege the first element of a retaliation claim, i.e., that Plaintiff engaged in constitutionally protected conduct by filing a grievance against Defendant Matevousian.   *Motion* [#38] at 11; *see Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2007).

### 1.    Claim Against Defendant Frandle (ADX Hearing Administrator)

With regards to Defendant Frandle, Defendants argue that Plaintiff fails to allege the second and third elements of his claim.   *Motion* [#38] at 11.   Specifically, Defendants argue that Plaintiff has failed to allege specific facts from which the Court could infer that Defendant Frandle "clearly omitted" the July 2015 psychology report when he made the decision to transfer Plaintiff to the ADX.   *Id.* at 12.   Defendants further argue that the lack of specific facts means that Plaintiff has not sufficiently alleged that Defendant Frandle "caused [Plaintiff] to suffer an injury" as required to satisfy the second element.   *Id.*

Defendants additionally argue that, beyond failing to allege that Defendant Frandle took an adverse action, Plaintiff also fails to allege that Defendant Frandle's actions "were substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct," as required to meet the third element.   *Id.* at 13 (quoting *Shero*, 510

F.3d at 1203). Defendants argue that, for example, Defendant Frandle did not make "any statements reflective of retaliatory motive." *Id.* Defendants assert retaliatory motive can be established when a defendant is "aware of the plaintiff's protected activity, that activity complained of [the defendant's] actions, and the defendant's adverse action was in close proximity to the protected activity." *Id.* at 13-14 (quoting *Gee v. Pacheo,* 627 F.3d 1178, 1189 (10th Cir. 2010)) (internal quotation marks omitted). Defendants argue that none of these requirements are met in Plaintiff's Amended Complaint [#28], because Plaintiff does not allege that: (1) Defendant Frandle was aware of the "Sensitive Nine" filing, (2) the "Sensitive Nine" complained of Defendant Frandle's conduct, or (3) Defendant Frandle took "retaliatory actions in close temporal proximity to Plaintiff's" protected conduct. *Motion* [#38] at 14.

With respect to the second element, the Court finds that Plaintiff has adequately alleged that Defendant Frandle's action of transferring Plaintiff to the ADX "caused [Plaintiff] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity . . . ." *Shero*, 510 F.3d at 1203. In *Gee v. Pacheco*, the court found that the action of transferring an inmate to an out-of-state supermax prison was "a responsive action that would chill a person of ordinary firmness from continuing to engage in" the activity of exercising his right to file specific grievances against prison officials. 627 F.3d at 1189 (internal quotation marks omitted) (internal citations omitted). Here, Plaintiff alleges that he filed a grievance and was subsequently transferred to the ADX by Defendant Frandle, which would "[chill] a person of ordinary firmness" from filing another grievance. *See id.* Thus, the Court finds that Plaintiff has adequately alleged the second element of his First Amendment retaliation claim.

However, Plaintiff must still allege specific facts from which the Court may conclude his transfer to the ADX was motivated by Plaintiff's exercise of his First Amendment right to file the "Sensitive Nine."  *See Peterson*, 149 F.3d at 1144.  With respect to this third element of the claim, the Court finds that Plaintiff has not adequately alleged that any potential adverse action taken by Defendant Frandle was "substantially motivated as a response to [Plaintiff's] exercise of constitutionally protected conduct." *Shero*, F.3d at 1203.  Plaintiff's allegation that Defendant Frandle "clearly omitted" the July 2015 psychology report that prevented Plaintiff's first ADX transfer "to accommodate Defendant Matevousian['s] retaliation against Plaintiff" when Defendant Frandle made his findings at the April 2016 hearing, *Am. Compl.* [#28] at 13, is supported only by Plaintiff's conclusory allegations and contradicted by other evidence appropriately examined on a motion to dismiss.  The Report specifically says that "[t]he [p]sychologist provided a memorandum indicating the inmate has no serious mental health issues which would preclude his placement in the ADX Control Unit."  [#38-1] at 16.  Additionally, Plaintiff attaches the July 2015 evaluation in his Response [#49] which substantiates the Report's comment.[7]  *See* [#49-1].  Although the evaluation notes that "Mr. Pitts . . . reports depressive symptoms," it does not include any mention that Plaintiff's mental status precludes him from being transferred to the ADX; in fact, it specifically "recommend[s] that he be housed in a maximum security environment in order to maintain the safety and

---

[7] Similar to the Report, Plaintiff specifically mentions the July 2015 evaluation and relies on it in his Amended Complaint [#28].  *See* [#28] at 8.  Therefore, it is properly considered by the Court in its adjudication of the Motion [#38].  *See GFF Corp.*, 130 F.3d at 1384.

security of the general inmate population." *See* [#49-1] at 17, 18.  Accordingly, the Court finds that it cannot accept Plaintiff's conclusory allegations that Defendant Frandle "clearly omitted" the July 2015 evaluation.  *Iqbal*, 556 U.S. at 675 (stating that the court does not consider conclusory factual allegations); *see also Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990) ("[M]ere allegations of constitutional retaliation will not suffice; [applicants] must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.").

Additionally, the Court finds that Plaintiff has not adequately alleged that Defendant Frandle had retaliatory motive.  *See Gee*, 627 F.3d at 1189.  First, Plaintiff has not alleged that Defendant Frandle was aware that Plaintiff engaged in a protected activity by filing a "Sensitive Nine."   Second, Plaintiff's "Sensitive Nine" did not complain of Defendant Frandle's conduct because it was filed before the ADX transfer hearing.  Third, although Plaintiff allegedly learned that there was going to be an ADX hearing approximately three weeks after he filed the "Sensitive Nine," *Am. Compl.* [#28] at 10, Defendant Frandle did not hold the hearing and issue his report until April 2016, approximately three months after the "Sensitive Nine" was filed, [#38-1] at 21.  Therefore, Defendant Frandle's actions were not taken in such close proximity to the protected action as to be considered retaliatory in the absence of other allegations supporting such a conclusion.  *See Lauck v. Campbell County*, 627 F.3d 805, 815 (10th Cir. 2010) ("We have repeatedly held that one cannot infer causation from temporal proximity alone when the time lapse between the protected activity and the retaliatory act exceeds three months.").

Furthermore, Plaintiff has failed to allege that "but for" Defendant Frandle's alleged retaliatory act of issuing the report, Plaintiff would not have been transferred.   *See Peterson*, 149 F.3d at 1140.   Plaintiff alleges without factual support that the July 2015 psychology report precluded him from originally being transferred to ADX due to mental health reasons.   *Am. Compl.* [#28] at 9.   As previously discussed, both Defendant Frandle's Report and the July 2015 evaluation suggest the opposite. *See* [#38-1] at 16; [#49-1] at 18.   The Report [#38-1] indicates that Plaintiff does not have mental health issues which "would preclude his placement in the ADX"; further, it relies heavily on the fight between Plaintiff and his cellmate that led to his cellmate's death for the reasoning behind the transfer.   [#38-1] at 17-18.   Moreover, the July 2015 evaluation describes Plaintiff's history of violence as a motivating factor for the recommendation to transfer Plaintiff to a "maximum security environment."   [#49-1] at 18.

Finally, the Court declines to address Plaintiff's argument, raised for the first time in his Response [#49], that he "alleged the absence of a legitimate penological reason for the adverse actions which amounts to an 8th Amendment claim of cruel and unusual punishment."   *Response* [#49] at 3.   The Amended Complaint [#28] does not include a claim for cruel and unusual punishment under the Eighth Amendment, and a complaint cannot be amended through a brief opposing a motion to dismiss.   *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001).

Based on the foregoing, the Court **recommends** that the Motion [#38] be **granted** to the extent Plaintiff's claim is asserted against Defendant Frandle, and that this aspect of his claim be **dismissed without prejudice** for failure to state a claim.   *See Gee*, 627 F.3d at 1186 (stating that "ordinarily the dismissal of a *pro se* claim under Rule 12(b)(6)

should be without prejudice, and a careful judge will explain the pleading' deficiencies so that a prisoner with a meritorious claim can then submit an adequate complaint") (citations omitted).

### 2.    Claim Against Defendant Matevousian (Atwater Warden)

Defendants also argue that Plaintiff has failed to state a First Amendment retaliation claim against Defendant Matevousian. *Motion* [#38] at 14.   In particular, Defendants argue that Plaintiff "cannot demonstrate" that Defendant Matevousian "took retaliatory adverse actions that '*caused* [ ] [P]laintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity.'"  *Id.* (citing *Shero*, 510 F.3d at 1203).  Further, Defendants argue Plaintiff has not adequately alleged that "but for" Defendant Matevousian's alleged retaliatory act, Plaintiff's complained of consequence of being transferred to the ADX would not have occurred.  *Id.*  Plaintiff's Response [#49] and Surreply [#54] offer no constructive counterarguments to Defendants' arguments, merely restating his allegations from the Amended Complaint [#28].  *See Response* [#49]; *Surreply* [#54].

The Court finds that Plaintiff has not sufficiently alleged that Defendant Matevousian's alleged retaliatory actions caused his alleged harm.  Plaintiff conclusively alleges that Defendant Matevousian "undermined the psychology report that precluded [ ] Plaintiff from placement in the ADX, which allowed Plaintiff once again to be referred to the ADX for placement, which amounts to retaliation."  *Motion* [#28] at 9-10.  The Court notes that Plaintiff offers no allegations supporting his statement that the psychology report prevented the first ADX hearing from resulting in a transfer, and as previously

discussed, the July 2015 evaluation does not indicate Plaintiff's mental health precluded him from being transferred to the ADX.  *See* [#49-1] at 18.

Plaintiff does allege that, when he questioned Defendant Matevousian about the potential ADX hearing, "Defendant Matevousian confirmed sarcastically that he did 'made [sic] some calls, talked to some people and got them to get rid of that psychological report.'"  *Id.* at 10.   However, Plaintiff admits that Defendant Matevousian's alleged comment was made sarcastically, which creates doubt as to whether it should be taken seriously.   Further, as Defendants note in the Reply [#52], even assuming that the comment was serious, Plaintiff offers no factual allegations to support how Defendant Matevousian got "rid" of the psychology report.  Plaintiff's only support is the conclusory statement that Defendant Matevousian persuaded the "Unknown Psychologist," with whom Plaintiff never spoke, to undermine the psychology Report.  *Id.* at 12.  The Court cannot accept such conclusory allegations for purposes of adjudicating a Rule 12(b)(6) motion.  *Iqbal*, 556 U.S. at 675 (stating that the court does not consider conclusory factual allegations); *see also Frazier*, 922 F.2d at 562 n.1 ("[M]ere allegations of constitutional retaliation will not suffice; [applicants] must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.").

Additionally, like Defendant Frandle, the Court declines to address Plaintiff's argument that he "alleged the absence of a legitimate penological reason for the adverse actions which amounts to an 8th Amendment claim of cruel and unusual punishment." *Response* [#49] at 3.  As previously noted, the Amended Complaint [#28] does not include a claim for cruel and unusual punishment under the Eighth Amendment, and a complaint

cannot be amended through a brief opposing a motion to dismiss. *Hayes*, 264 F.3d at 1025.

Accordingly, the Court **recommends** that the Motion [#38] be **granted** to the extent Plaintiff's claim is asserted against Defendant Matevousian, and that this aspect of his claim be **dismissed without prejudice** for failure to state a claim. *See Gee*, 627 F.3d at 1186.

### C.   Claim Against Unknown Psychologist

Plaintiff proceeds in forma pauperis in this matter. *Order* [#9]. Pursuant to 28 U.S.C. § 1915(e)(2) regarding proceedings in forma pauperis, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . (B) the action . . . (ii) fails to state a claim on which relief may be granted . . . ." Thus, although the Motion [#38] is not asserted on behalf of the unidentified psychologist Defendant in this case, the Court may, pursuant to 28 U.S.C. § 1915(e)(2), examine whether Plaintiff has stated a claim against this Defendant.

As with Defendants Frandle and Matevousian, Plaintiff is asserting a First Amendment retaliation claim against Defendant Unknown Psychologist. *Am. Compl.* [#28] at 3, 8. The Court finds that Plaintiff has not sufficiently alleged that Defendant Unknown Psychologist's alleged retaliatory action meets the second element of his claim. To meet this requirement, Plaintiff must allege with specific factual support that the Unknown Psychologist's "actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in" his constitutionally protected conduct of filing a grievance. *Shero*, 510 F.3d at 1203; *Peterson*, 149 F.3d at 1144. Here,

Plaintiff alleges that Unknown Psychologist "decided to be persuaded . . . to undermine the psychology report," and that by doing so "cleared the way for Plaintiff to be sent to the ADX." *Am. Compl.* [#28] at 10.  Although being transferred to a supermax prison can "chill a person of ordinary firmness," *Gee*, 627 F.3d at 1189, Plaintiff has not provided specific facts regarding how Defendant Unknown Psychologist allegedly "undermined" the evaluation, or how doing so led to the ADX transfer hearing.  Thus, the Court  cannot accept Plaintiff's conclusory allegation.  *See Fraizer*, 922 F.2d at 562 n.1 ("[M]ere allegations of constitutional retaliation will not suffice; [applicants] must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.").

Furthermore, in order to successfully plead a claim for First Amendment retaliation, Plaintiff must plead allegations supported by specific facts that Defendant Unknown Psychologist was motivated by Plaintiff's filing of the "Sensitive Nine" to "undermine" the July 2015 evaluation and transfer Plaintiff to the ADX.  *See Shero*, 510 F.3d at 1203; *Peterson*, 149 F.3d at 1144.  The Court finds that Plaintiff's allegation against Defendant Unknown Psychologist does not meet the third element of his claim.  First, Plaintiff has not made allegations that Defendant Unknown Psychologist was aware that Plaintiff engaged in a protected activity by filing a "Sensitive Nine."  Second, Plaintiff's "Sensitive Nine" did not complain of Defendant Unknown Psychologist's conduct because Defendant Unknown Psychologist's alleged undermining occurred after the "Sensitive Nine" was filed.  Third, Plaintiff has not pled any allegations that Defendant Unknown Psychologist's alleged undermining transpired in close temporal proximity to Plaintiff's filing of the "Sensitive Nine."

Finally, as with the other two Defendants, the Court declines to address Plaintiff's argument that he "alleged the absence of a legitimate penological reason for the adverse actions which amounts to an 8th [sic] Amendment claim of cruel and unusual punishment." *Response* [#49] at 3.  The Amended Complaint [#28] does not include a claim for cruel and unusual punishment under the Eighth Amendment, and a complaint cannot be amended through a brief opposing a motion to dismiss.  *Hayes*, 264 F.3d at 1025.

Accordingly, the Court **recommends**  that Plaintiff's First Amendment retaliation claim against Defendant Unknown Psychologist be **dismissed without prejudice**.  *Culp v. Williams*, No. 10-cv-00886-CMA-CBS, 2011 WL 1597686, at *4 (D. Colo. Apr. 27, 2011) (dismissing claims against John Doe defendants without prejudice "due to Plaintiff's failure to identify properly these Defendants and to exhaust his administrative remedies in connection with these claims"); *Culp v. Williams*, 456 F. App'x 720 (10th Cir. 2012) (affirming dismissal without prejudice of claims against John Doe defendants); *see also Gee*, 627 F.3d at 1186.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#38] be **GRANTED**.

IT IS FURTHER **RECOMMENDED** that, pursuant to Fed. R. Civ. P. 12(b)(1), Plaintiff's claim, to the extent asserted under the APA, be **DISMISSED without prejudice** for lack of jurisdiction.

IT IS FURTHER **RECOMMENDED** that, pursuant to Fed. R. Civ. P 12(b)(6), Plaintiff's First Amendment retaliation claim be **DISMISSED without prejudice** for failure to state a claim.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999; *Talley v. Hesse*, 91 F.3d 1411, 1412-12 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Reap Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: August 12, 2021

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge