IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02691-RM-KLM

EDGAR NELSON PITTS,

     Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,
ANDRE MATEVOUSIAN, in his official capacity as Warden,
FREDERICK FRANDLE, in his official capacity as Hearing Administrator, and
DIA BOUTWELL, in her official capacity as Psychologist,

     Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss** [#72][1] (the "Motion"). Plaintiff, who proceeds as a pro se litigant,[2] filed a Response [#77] in opposition to the Motion [#72], Defendants filed a Reply [#79], and Plaintiff filed a Surreply [#83].[3] Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1(c), the Motion

_____

[1] "[#72]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). In addition, a pro se litigant must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[3] Plaintiff did not file a motion seeking leave to file the Surreply [#83], and he did not show in his Surreply that the Surreply was necessary because Defendants relied on new material in their Reply [#79]. *See Green v. New Mexico*, 420 F.2d 1189, 1196 (10th Cir. 2005). Nevertheless, the

[#72] has been referred to the undersigned for a recommendation regarding disposition. *See* [#75].  The Court has reviewed the briefs, the case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court **RECOMMENDS** that the Motion [#72] be **GRANTED**.

## I. Background[4]

Plaintiff initiated this action in the Eastern District of California on July 29, 2019. *See Compl.* [#1].  More than a year later, on September 4, 2020, his case was transferred to the District of Colorado, *see* [#25], where the Court ordered Plaintiff to cure the deficiencies in his Complaint [#1] within thirty days or the action would be dismissed.  *See Order Directing Plaintiff to Cure Deficiencies* [#27].  On September 25, 2020, Plaintiff filed the Amended Complaint [#28].  Defendants filed their first Motion to Dismiss [#38] on December 14, 2020.  The undersigned subsequently recommended that Plaintiff's claims be dismissed without prejudice.  *Recommendation* [#67] at 21.  The District Judge adopted the Recommendation [#67] and granted Plaintiff's Motion to Amend His Complaint [#69].  *Order* [#70]. On October 14, 2021, Plaintiff filed the Second Amended Complaint [#71], which is now the operative complaint.

Plaintiff was originally a prisoner at the United States Penitentiary—Atwater ("Atwater") in Atwater, California, where Defendant Andre Matevousian ("Matevousian") served as Warden.  *Second Am. Compl.* [#71] at 2.  In July 2011, during his time at

---

Court has reviewed and considered Plaintiff's Surreply in connection with its adjudication of the Motion [#72].

[4] For purposes of resolving the Motion [#72], the Court accepts as true all well-pled, as opposed to conclusory, allegations made in Plaintiff's Second Amended Complaint [#71].  *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Atwater, Plaintiff engaged in a "fight that resulted in the death of Plaintiff's cellmate." *Id.* at 12. Thereafter, Plaintiff was placed in the Special Housing Unit ("SHU") at Atwater from 2011 until he was transferred to the United States Penitentiary—Administrative Maximum ("ADX") facility in Florence, Colorado, in July 2016. *Id.* at 3, 11.

Defendants Matevousian, Frederick Frandle ("Frandle"), and Dr. Dia Boutwell ("Boutwell") work for Defendant Federal Bureau of Prisons ("BOP") in various capacities. *Id.* at 2. Defendant Matevousian served as Warden at Atwater while Plaintiff was held there and allegedly initiated Plaintiff's transfer from the Atwater SHU to the ADX. *Id.* at 2, 8. Defendant Frandle administrated Plaintiff's ADX referral hearing prior to his transfer. *Id.* at 2, 9. Defendant Boutwell is a psychologist for Defendant BOP, and reviewed Plaintiff's mental health records to determine his eligibility for placement in the ADX. *Id.* at 2, 8-9. All individual defendants are sued in their official capacities. *Id.* at 2.

Similar to Plaintiff's description of events in the Amended Complaint [#28], many details in the Second Amended Complaint [#71] are unclear. Plaintiff's original transfer from Atwater to the ADX was apparently scheduled for sometime in late 2015. However, a July 2015 psychological evaluation ("July 2015 Evaluation") of Plaintiff allegedly caused his transfer to the ADX to be denied in an October 6, 2015, memorandum ("October 2015 Memo") by a Dr. William Bickart. *See July 2015 Evaluation* [#49] at 12;[5] *October 2015*

---

[5] Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, a Court may consider documents outside of the complaint on a motion to dismiss in three instances. First, the Court may consider outside documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000). Second, the Court may consider outside documents subject to judicial notice, including court documents and matters of public record. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). Third, the Court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in his complaint. *GFF Corp. v. Associated*

*Memo* [#71] at 21.[6]   Plaintiff alleges that "on or about" the day his ADX transfer was denied, Defendant Matevousian presented Plaintiff with an ultimatum: "enroll in the Secure Mental Health Stepdown Program or be held in the SHU indefinitely."   *Second Am. Compl.* [#71] at 3-4.   Plaintiff allegedly interviewed for the Secure Mental Health Stepdown Program (the "Stepdown Program") on November 20, 2015, but "refused to enroll in the program."   *Id.* at 5.   Sometime in December 2015, Plaintiff additionally refused to enter another "new program" intended for "unverified PC [protective custody inmates]."   *Id.* at 6.   In response to this refusal, Defendant Matevousian allegedly "abruptly stopped" an unspecified transfer that apparently would have sent Plaintiff to some penitentiary other than Atwater or the ADX.   *Id.* at 5.

Plaintiff alleges that Defendant Matevousian violated an unidentified policy by attempting to keep him in the SHU indefinitely.   *Id.* at 7.   Because of the alleged policy violation, Plaintiff states that he was "reluctant to pursue administrative remed[ies]" for fear of "Defendant Matevousian's vindictive actions against prisoners who challenge him."   *Id.* at 6.   However, Plaintiff alleges that "at the urging" of prison officials, he "filed a 'Sensitive Nine' . . . ."[7]   *Id.* at 7.   Plaintiff asserts that he had a "First Amendment right to

---

*Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).   The July 2015 Evaluation falls into the third category.   The document is referenced throughout the Second Amended Complaint [#71] as a professional assessment of Plaintiff's mental health.   Plaintiff's claims center on his argument that the July 2015 Evaluation should have precluded his transfer to the ADX, and that Defendants "undermined" and "omitted" the document's findings in order to ensure the transfer succeeded. *Second Am. Compl.* [#71] at 7, 11.

[6] Plaintiff attaches the October 2015 Memo to his Second Amended Complaint [#71].   The Court treats such a document as part of the complaint for purposes of deciding a motion to dismiss. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).   Therefore, the Court considers the contents of the October 2015 Memo when ruling on the Motion [#72].

[7] Although not explained in the Second Amended Complaint [#71], a "Sensitive Nine" is, according to Defendants, a grievance an inmate may file "directly to the appropriate Regional Director" for

file the 'Sensitive Nine' . . . to challenge Defendant Matevousian's threat to hold Plaintiff in the SHU indefinitely." *Id.* at 7.

Plaintiff filed the "Sensitive Nine" against Defendant Matevousian in January 2016 while still at Atwater. *Id.* After Plaintiff filed the "Sensitive Nine," Plaintiff alleges that Defendant Matevousian "abused his authority and discretion" by undermining the "[July 2015 Evaluation] that precluded Plaintiff from placement in the ADX," therefore allowing Plaintiff to be referred for transfer to the ADX a second time. *Id.* Plaintiff alleges that this "amounts to retaliation" by Defendant Matevousian. *Id.*

At an unspecified time in January 2016, Plaintiff began hearing "rumors" that "Defendant Matevousian was pulling strings to get Plaintiff referred to the ADX again." *Id.* at 8. Plaintiff received a Rejection Notice relating to his "Sensitive Nine" on January 28, 2016. *Id.* When Plaintiff asked Defendant Matevousian at an unspecified time about the "rumor," Defendant Matevousian allegedly "confirmed in a spiteful manner by saying 'I told them you're not crazy.'" *Second Am. Compl.* [#71] at 8. Plaintiff alleges that Defendant Matevousian then presented a "changed" ultimatum: the Stepdown Program or the ADX. *Id.* Plaintiff alleges that, on February 3, 2016, Atwater psychologists Dr. Bain and Dr. Kodger "convinced Plaintiff . . . [to] enroll" in the Stepdown Program. *Id.*

On March 1, 2016, a Mental Health Reassessment ("Reassessment") of Plaintiff's ADX referral by Defendant Boutwell "re-reviewed" Plaintiff's psychological records and concluded "there is no evidence of mental illness which would preclude [Plaintiff's]

---

sensitive issues, such as if an "inmate's safety or well-being would be placed in danger" if the grievance became known at the institution. *Motion* [#72] at 5 n.4.

placement at ADX Florence." *Reassessment* [#71] at 23, 25. [8]  Plaintiff alleges Defendant Boutwell prepared the Reassessment to "accommodate an improper agenda"— presumably, Defendant Matevousian's efforts to "undermine" the July 2015 Evaluation. *Second Am. Compl.* [#71] at 8-9.  Plaintiff further alleges that this unspecified "retaliation" by Defendant Matevousian led to the scheduling of the second ADX referral hearing.  *Id.* at 13.

Sometime after Defendant Boutwell completed her Reassessment, Plaintiff alleges that previous restrictions were reimposed which prevented Plaintiff from having a cellmate, participating in group recreation, and working as an SHU orderly.  *Id.* at 9. However, the Second Amended Complaint [#71] does not clarify when these restrictions were originally imposed, removed, or reimposed.  Plaintiff further alleges that he had not incurred any new infractions and that his "only conduct" during this time was filing the "Sensitive Nine," which, Plaintiff asserts, must be the reason that Defendant Matevousian retaliated against him.  *Id.* at 13.  When Plaintiff spoke with Defendant Matevousian on an unspecified date in March 2016 about Plaintiff's pending ADX referral hearing, Defendant Matevousian allegedly replied "in a spiteful manner [that he] 'made some calls, talked to some people and got them to get rid of that psychological report.'"  *Id.* at 16.

Defendant Frandle was the administrator for Plaintiff's ADX referral hearing held on April 16, 2016.  *Id.* at 9.  During the hearing, three prison staff members made oral or written statements on Plaintiff's behalf, describing a lack of incidents since Plaintiff's fight with his cellmate in July 2011.  *Id.* at 11-12.  Plaintiff also made a statement that he had

---

[8]  Plaintiff attaches Defendant Boutwell's Reassessment to his Second Amended Complaint [#71]. Thus, as previously noted, the Court treats the Reassessment as part of the complaint and considers the contents of the Reassessment in deciding the Motion [#72]. *See Tal*, 453 F.3d at 1264 n.24.

"been doing everything possible to better" himself.  *Id.* at 12.  In the subsequently issued "Control Unit Hearing Administrator's Report" (the "Report"), Defendant Frandle stated that "the psychologist provided a memorandum indicating the inmate had no serious mental health issues which preclude his placement in the ADX control unit."  *See* [#38-1] at 16.[9]  However, despite this explicit statement in the Report, Plaintiff alleges that Defendant Frandle "clearly omitted the fact that Plaintiff was denied placement at the ADX on psychological grounds on October 6, 2015."  *Second Am. Compl.*  [#72] at 11.  Ultimately, Plaintiff's transfer to the ADX was approved, of which he was notified on May 9, 2016.  *Id.*  Plaintiff then filed an appeal in accordance with the notice of his transfer, but on July 7, 2016, Plaintiff "was recieved [sic] at the ADX in Florence, Colorado."  *Id.*

Plaintiff brings three claims.  First, he renews his claim that Defendants violated Plaintiff's First Amendment rights by retaliating against him for filing a grievance against Defendant Matevousian.  *Second Am. Compl.* [#71] at 3.  Second, Plaintiff asserts a new claim that Defendants' "wrong and unnecessary" transfer of Plaintiff to the ADX violated his Eighth Amendment rights by "underdiagnosing and misdiagnosing" his "mental health needs."  *Id.* at 13, 15.  Finally, Plaintiff asserts another new claim that Defendants violated his procedural due process rights when they deemed him fit for transfer to the ADX, which extended his time in segregated confinement.  *Id.* at 15.  Plaintiff seeks declaratory and

---

[9] As previously noted, when ruling on a motion to dismiss, a court may consider facts supported by documents outside the complaint when the documents are both central to the plaintiff's claims and referred to in the complaint. *GFF Corp.*, 130 F.3d at 1184.  Defendant Frandle's "Control Unit Hearing Report," [#38-1] may be considered because Plaintiff specifically mentions and relies on this document in his Second Amended Complaint [#71].  Plaintiff's claims against Defendant Frandle center on Defendant Frandle's alleged inadequate consideration of Plaintiff's mental health in preparing the Report.  *See* [#71] at 10-11.  Therefore, the Report is properly considered by the Court.

injunctive relief to be "immediately released from the ADX to the general population of another penitentiary." *Id.* at 18.

In the present Motion [#72], Defendants argue that Plaintiff's allegations fail to state a claim under Rule 12(b)(6) for two reasons. *Motion* [#72] at 2. First, Defendants argue that Plaintiff released his claims as a member of the class settlement in *Cunningham v. Federal Bureau of Prisons*, No. 12-cv-01570-RPM (D. Colo.). *Id.* Alternatively, Defendants argue that Plaintiff fails to state a claim against any Defendant. *Id.* In the Response [#77], Plaintiff argues that the *Cunningham* settlement does not preclude his claims because he only challenges the "unconstitutional methods" used at Atwater to transfer him to the ADX, not the mental health treatment he received as an ADX inmate. [#77] at 2-3. Plaintiff further argues that he has properly stated claims for which relief may be granted. *See Response* [#77]. The Court concludes that Plaintiff fails to adequately allege cognizable claims and therefore does not reach the question of the scope of the *Cunningham* settlement's preclusive effect.

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir.

1999) (citation omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations.") (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).  That said, "[s]peculative facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests"; the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik v. United Airlines*, 671 F.3d 1188, 1190 (10th Cir. 2012).  To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] [ ] that the pleader is entitled to

relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

### A.    First Amendment

Defendants argue that Plaintiff has failed to provide sufficient allegations to state a First Amendment retaliation claim against any Defendant.  *Motion* [#72] at 2.

A plaintiff may state a First Amendment retaliation claim by alleging the following three elements: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."   *Shero*, 510 F.3d at 1203.  Additionally, to state a plausible First Amendment retaliation claim, a plaintiff must also allege facts showing that "but for the retaliatory motive," the complained-of actions "would not have taken place." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).   "[A]n inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  *Id.*  Further, prisoner retaliation claims are viewed with "skepticism because every act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct . . . ."  *Hyberg v. Enslow*, No. 18-cv-00014-RM-NRN, 2019 WL 979026, at *7 (D. Colo. Feb. 28, 2019) (internal brackets omitted).

Defendants do not contend that Plaintiff has failed to adequately allege the first element of a retaliation claim, i.e., that Plaintiff engaged in constitutionally protected

conduct by filing a grievance against Defendant Matevousian. *Motion* [#72] at 11; *see Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2007). Furthermore, as to the second element, Defendants do not contest that transfer to the ADX "caused [Plaintiff] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity . . . ." *Shero*, 510 F.3d at 1203; *see also Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010). Defendants' arguments on the second element instead focus on whether the individual Defendants' actions caused Plaintiff's transfer to the ADX. *See Motion* [#72] at 14-16.

### 1.    Defendant Matevousian

Defendants argue that Plaintiff fails to adequately state the second element of a First Amendment retaliation claim against Defendant Matevousian, the former Atwater Warden. *Motion* [#72] at 14. In particular, Defendants argue that Plaintiff does not "plead facts plausibly showing" that Defendant Matevousian "took retaliatory adverse actions that 'caused [ ] [P]laintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in protected activity.'" *Id.* (emphasis omitted) (citing *Shero*, 510 F.3d at 1203). Further, Defendants contend that Plaintiff has not adequately alleged that, "but for" Defendant Matevousian's alleged retaliatory act, Plaintiff's complained-of consequence of being transferred to the ADX would not have occurred. *Motion* [#72] at 14. Plaintiff's Response [#77] and Surreply [#83] offer no constructive counterarguments to Defendants' arguments. Instead, Plaintiff merely restates his allegations from the Second Amended Complaint [#71] and his conviction that "most aspects of Plaintiff's claim has [sic] been substantiated by" the relevant psychological reports. *Surreply* [#83]

at 5.  *See July 2015 Evaluation* [#49] at 12; *October 2015 Memo* [#71] at 21; *Reassessment* [#71] at 23.

The Court finds that Plaintiff has not sufficiently alleged that Defendant Matevousian's alleged retaliatory actions caused Plaintiff's alleged harm.  Plaintiff conclusorily alleges that Defendant Matevousian "got [unidentified people] to get rid of that psychological report."  *Second Am. Compl.* [#71] at 16.  Plaintiff's argument depends on his assertion that the July 2015 Evaluation "precluded Plaintiff from ADX placement" and therefore needed to be "undermin[ed]" by Defendant Matevousian.  *Id.* at 15-16.  The July 2015 Evaluation does not support this conclusion.  Although it notes that "Mr. Pitts . . . reports depressive symptoms," the July 2015 Evaluation does not state, explicitly or implicitly, that Plaintiff's mental status precludes him from being transferred to the ADX; in fact, it specifically "recommend[s] that he be housed in a maximum security environment in order to maintain the safety and security of the general inmate population." *See July 2015 Evaluation* [#49] at 17, 18.

Plaintiff emphasizes his allegation that, when he questioned Defendant Matevousian about the second ADX referral, "Defendant Matevousian said in a spiteful manner that he 'made some calls, talked to some people and got them to get rid of that psychological report.'"  *Response* [#77] at 6; *Second Am. Compl.* [#71] at 16.  As Defendants point out, even assuming that Plaintiff's account of his conversation with Defendant Matevousian is true, Plaintiff offers no factual allegations to support how Defendant Matevousian got "rid" of the report.  *Motion* [#72] at 15.  The Second Amended Complaint [#71] is "devoid of specifics" regarding any action Defendant Matevousian might have taken to facilitate his alleged retaliation against Plaintiff.  *Id.*  Plaintiff only

alleges speculatively that Defendant Matevousian "abused his authority and discretion to undermine the [July 2015 Evaluation], therefore allowing "Plaintiff once again to be referred to the ADX for placement which amounts to retaliation."  *Id.* at 7.  The Court cannot accept such conclusory allegations in adjudicating a Rule 12(b)(6) motion.  *Iqbal*, 556 U.S. at 675 (stating that the court does not consider conclusory factual allegations); *see also Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990) ("[M]ere allegations of constitutional retaliation will not suffice; [applicants] must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.").

While "ordinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice," dismissal with prejudice is warranted "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."  *Gee*, 627 F.3d at 1186 (citing *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001)).  The Second Amended Complaint [#71] is Plaintiff's third complaint in this lawsuit.  Moreover, this is the second time the Court has addressed the merits of Plaintiff's First Amendment retaliation claim against Defendant Matevousian.  Plaintiff failed to correct the deficiencies in his First Amendment retaliation claim as explained in the Court's first Recommendation [#67].  The Court concludes that permitting Plaintiff to file another complaint against Defendant Matevousian would be futile.

Based on the foregoing, the Court **recommends** that the Motion [#72] be **granted** to the extent Plaintiff's First Amendment retaliation claim, as asserted against Defendant Matevousian, be **dismissed with prejudice** for failure to state a claim.  *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding that prejudice should attach to a

dismissal when the plaintiff has not made allegations "which, upon further investigation and development, could raise substantial issues.").

### 2.    Defendant Frandle

With regard to Defendant Frandle, the ADX Hearing Administrator, Defendants argue that Plaintiff fails to adequately allege the third element of his First Amendment retaliation claim.  *Motion* [#72] at 11.  Specifically, Defendants argue that Plaintiff has failed to allege specific facts from which the Court could infer that Defendant Frandle "clearly omitted" the July 2015 Evaluation when he made the decision to transfer Plaintiff to the ADX.  *Id.*

Defendants further argue that Plaintiff fails to allege that Defendant Frandle's actions "were substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct," as required to meet the third element.  *Id.* at 13 (quoting *Shero*, 510 F.3d at 1203).  Defendants assert that, for example, Defendant Frandle did not make "any statements reflective of retaliatory motive."  *Id.* at 11. Defendants argue that none of the allegations in Plaintiff's Second Amended Complaint [#71] suggest that Defendant Frandle's actions were "substantially motivated" by a desire to retaliate against Plaintiff, *Shero*, 510 F.3d at 1203, because Plaintiff does not allege that: (1) Defendant Frandle was aware of the "Sensitive Nine" filing, (2) the "Sensitive Nine" complained of Defendant Frandle's conduct, or (3) Defendant Frandle's "alleged adverse action 'was in close temporal proximity to Plaintiff's protected conduct.'"  *Motion* [#72] at 13 (quoting *Gee*, 627 F.3d at 1189).

Plaintiff must allege specific facts from which the Court may conclude his transfer to the ADX was motivated by Plaintiff's exercise of his First Amendment right to file the

"Sensitive Nine." *See Peterson*, 149 F.3d at 1144.  With respect to this third element of the claim, the Court finds that Plaintiff has not adequately alleged that any potential adverse action taken by Defendant Frandle was "substantially motivated as a response to [Plaintiff's] exercise of constitutionally protected conduct." *Shero*, 510 F.3d at 1203. Plaintiff's only relevant allegation against Defendant Frandle is that he "clearly omitted the fact that Plaintiff was denied [his first] placement at the ADX on psychological grounds" when Defendant Frandle made his findings at the April 2016 hearing. *Second Am. Compl.* [#71] at 11.  Plaintiff fails to allege any retaliatory motive on Defendant Frandle's part, only that Defendant Frandle's role in the second ADX referral hearing was "necessary [for] the retaliatory actions of the Defendants to work." *Response* [#77] at 17.  Moreover, the assertion that Defendant Frandle "clearly omitted" relevant information about Plaintiff's mental health is contradicted by Defendant Frandle's own Report [#38-1].  The Report specifically states that "[t]he [p]sychologist provided a memorandum indicating the inmate has no serious mental health issues which would preclude his placement in the ADX Control Unit." [#38-1] at 16.  The Court notes that, as previously discussed, the July 2015 Evaluation does not indicate Plaintiff's mental health precluded him from being transferred to the ADX and advises that Plaintiff be held in a "maximum security environment." *See July 2015 Evaluation* [#49] at 18.  Accordingly, the Court finds that it cannot accept Plaintiff's conclusory allegations that Defendant Frandle "clearly omitted" the July 2015 Evaluation or acted to retaliate against Plaintiff for filing the "Sensitive Nine." *Iqbal*, 556 U.S. at 675 (stating that the court does not consider conclusory factual allegations); *see also Frazier*, 922 F.2d at 562 n.1 ("[M]ere allegations of constitutional retaliation will not

suffice; [applicants] must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.").

The Court further finds that Plaintiff has not adequately alleged that Defendant Frandle had a retaliatory motive. *See Gee*, 627 F.3d at 1189. First, Plaintiff has not alleged that Defendant Frandle was aware that Plaintiff engaged in a protected activity by filing a "Sensitive Nine." Second, Plaintiff's "Sensitive Nine" did not complain of Defendant Frandle's conduct because it was filed before the ADX transfer hearing. Third, although Plaintiff allegedly heard rumors about a second ADX referral approximately three weeks after filing the "Sensitive Nine," Defendant Frandle did not hold the hearing and issue his Report until April 2016, more than three months after the "Sensitive Nine" was filed. *Second Am. Compl.* [#71] at 10; [#38-1] at 21. Therefore, Defendant Frandle's actions were not taken in such close proximity to the protected action as to be considered retaliatory in the absence of other allegations supporting such a conclusion.[10] *See Lauck v. Campbell County*, 627 F.3d 805, 815 (10th Cir. 2010) ("We have repeatedly held that one cannot infer causation from temporal proximity alone when the time lapse between the protected activity and the retaliatory act exceeds three months.").

Finally, Plaintiff fails to allege that "but for" Defendant Frandle's alleged retaliatory motives in issuing the Report, Plaintiff would not have been transferred. *See Peterson*, 149 F.3d at 1140. Plaintiff alleges that the July 2015 Evaluation precluded him from originally being transferred to the ADX due to mental health reasons. *Second Am. Compl.*

---

[10] Plaintiff argues in his Response [#77] that because "ADX referral is a process that usually takes about 9 [sic] months to a year to complete," Defendant Matevousian likely initiated the referral within three months of the filing of the "Sensitive Nine." [#77] at 17. This argument is relevant only to the discussion of Defendant Matevousian's conduct. Defendant Frandle's alleged retaliatory conduct—preparing the Report on April 16, 2016—took place more than three months after Plaintiff allegedly filed the "Sensitive Nine" around January 1, 2016. *Id.*

[#72] at 9.  Both Defendant Frandle's Report and the July 2015 Evaluation suggest the opposite.  *See Report* [#38-1] at 16; *July 2015 Evaluation* [#49] at 18.  The Report indicates that Plaintiff does not have mental health issues which "would preclude his placement in the ADX"; further, it relies heavily on the fight between Plaintiff and his cellmate that led to his cellmate's death for the reasoning behind the transfer.  *Report* [#38-1] at 17-18.  Moreover, the July 2015 Evaluation describes Plaintiff's history of violence as a motivating factor for the recommendation to transfer Plaintiff to a "maximum security environment."  [#49] at 18.

As with Plaintiff's First Amendment retaliation claim against Defendant Matevousian, the Court has previously ruled on the merits of Plaintiff's First Amendment retaliation claim against Defendant Frandle.  Like the Amended Complaint [#28], the allegations in Plaintiff's Second Amended Complaint [#71] fail to adequately state a First Amendment retaliation claim against Defendant Frandle.  The Court finds that granting Plaintiff a third opportunity to amend this claim would be futile.  *See Gee*, 627 F.3d at 1186 (citing *Oxendine*, 241 F.3d at 1275).  Accordingly, the Court **recommends** that the Motion [#72] be **granted** to the extent Plaintiff's First Amendment retaliation claim, as asserted against Defendant Frandle, be **dismissed with prejudice** for failure to state a claim.  *See Reynoldson*, 907 F.2d at 127.

### 3.    Defendant Boutwell

Defendants argue that Plaintiff fails to adequately allege the second and third elements of a First Amendment retaliation claim against Defendant Boutwell, the BOP Psychologist.  *Motion* [#72] at 2, 15.

To meet the second element of a First Amendment retaliation claim, Plaintiff must allege with specific factual support that Defendant Boutwell's "actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in" his constitutionally protected conduct of filing a grievance. *Shero*, 510 F.3d at 1203; *Peterson*, 149 F.3d at 1144. Here, Plaintiff alleges that Defendant Boutwell "undermin[ed]" the July 2015 Evaluation by "underdiagnosing and misdiagnosing [Plaintiff's] mental health needs to accommodate an improper agenda," therefore enabling Plaintiff's transfer to the ADX. *Second Am. Compl.* [#71] at 15-16. Plaintiff has not provided specific facts regarding how Defendant Boutwell allegedly "undermined" the evaluation, which Defendant Boutwell's Reassessment analyzes and relies on. *See Reassessment* [#71] at 23. Plaintiff does not allege that Defendant Boutwell's Reassessment initiated his second ADX referral or caused his transfer—decisions apparently made by officials other than Defendant Boutwell. Thus, the Court cannot accept Plaintiff's conclusory allegations. *See Fraizer*, 922 F.2d at 562 n.1 ("[M]ere allegations of constitutional retaliation will not suffice; [applicants] must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."). The Court finds that Plaintiff has not sufficiently alleged that Defendant Boutwell's alleged retaliatory action meets the second element of his claim

Regarding the third element of a First Amendment retaliation claim, the Court finds that Plaintiff fails to adequately plead allegations supported by specific facts that Defendant Boutwell was substantially motivated by Plaintiff's filing of the "Sensitive Nine" to "undermine" the July 2015 Evaluation and transfer Plaintiff to the ADX. *See Shero*, 510 F.3d at 1203; *Peterson*, 149 F.3d at 1144. First, Plaintiff has not alleged that Defendant

Boutwell was aware that Plaintiff engaged in a protected activity by filing a "Sensitive Nine." Second, Plaintiff's "Sensitive Nine" did not complain of Defendant Boutwell's conduct because Defendant Boutwell's alleged undermining occurred after the "Sensitive Nine" was filed. Third, Plaintiff has not pled any allegations that Defendant Boutwell's alleged undermining conduct transpired in close temporal proximity to Plaintiff's filing of the "Sensitive Nine."

Given that Plaintiff fails to adequately allege a First Amendment retaliation claim against Defendant Boutwell, the Court now considers whether dismissal with prejudice is appropriate. Defendant Boutwell is first named as a defendant in the Second Amended Complaint [#71]. However, Plaintiff's claims against Defendant Boutwell mirror his allegations against "Unknown Psychologist" in the Amended Complaint [#28], which the Court found did not adequately allege a First Amendment retaliation claim. *Recommendation* [#67] at 21. The additions of Defendant Boutwell's name, job title, and a copy of her Reassessment do not mend the deficiencies in Plaintiff's claim against her. The Court finds that granting Plaintiff another opportunity to amend his First Amendment retaliation claim against Defendant Boutwell would be futile. *See Gee*, 627 F.3d at 1186 (citing *Oxendine*, 241 F.3d at 1275). Accordingly, the Court **recommends** that Plaintiff's First Amendment retaliation claim against Defendant Boutwell be **dismissed with prejudice**. *See Reynoldson*, 907 F.2d at 127.

### 4. Defendant BOP

Plaintiff sues each individual defendant in his or her official capacity. The law requires such claims to be treated as a suit against Defendant BOP itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Court has now twice addressed the merits of

Plaintiff's First Amendment claims against the individual defendants.  Because Plaintiff does not provide allegations suggesting unconstitutional conduct by anyone else at the BOP, and having concluded that dismissal with prejudice is appropriate for the other three defendants, the Court finds that Plaintiff's claim against Defendant BOP must be dismissed with prejudice as well.  *See Gee*, 627 F.3d at 1186 (citing *Oxendine*, 241 F.3d at 1275).  Accordingly, the Court **recommends** that Plaintiff's First Amendment retaliation claim against Defendant BOP be **dismissed with prejudice**.  *See Reynoldson*, 907 F.2d at 127.

## B.    Eighth Amendment

Defendants argue that Plaintiff has failed to sufficiently allege an Eighth Amendment claim.  *Motion* [#72] at 17.

The Constitution does not mandate comfortable prisons, *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is settled law that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  The Eighth Amendment provides that "cruel and unusual punishments" shall not be inflicted.  U.S. Const. amend. VIII.  Punishments that "involve the unnecessary and wanton infliction of pain" violate this provision.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  Because "[a]n inmate must rely on prison authorities to treat his medical needs," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment."  *Estelle v. Gramble*, 429 U.S. 97, 103-04 (1976) (quoting *Gregg*, 428 U.S. at 173).  To sufficiently

allege "deliberate indifference," a prisoner must allege that (1) he was deprived of a medical need that is objectively "sufficiently serious," and (2) the defendant subjectively knew of and disregarded "an excessive risk to [the prisoner's] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).

The subjective component of the deliberate indifference test "requires a plaintiff to demonstrate that officials acted with a 'sufficiently culpable state of mind.'" *Vega v. Davis*, 673 F. App'x 885, 890 (10th Cir. 2016) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Furthermore, "a prison official cannot be liable unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (internal quotation marks omitted).  Importantly, "it is obduracy and wantonness, not inadvertence or error in good faith," that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

When assessing the subjective component of an Eighth Amendment claim, the Tenth Circuit recognizes two types of conduct that constitute deliberate indifference. *Washington v. O'Neal*, No. 19-cv-03129-MEH, 2021 WL 103061, at *5 (D. Colo. Jan. 12, 2021) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000)).  First, a medical professional may fail to properly treat a serious medical condition. *Sealock*, 218 F.3d at 1211.  Second, prison officials may prevent an inmate from receiving treatment or accessing the medical personnel capable of evaluating the need for treatment. *Id*.

"[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165

F.3d 803, 811 (10th Cir. 1999) (citing *Estelle*, 429 U.S. at 107).  The Tenth Circuit has repeatedly held that medical decisions made by professionals do not give rise to a deliberate indifference claim.  *See, e.g.*, *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006) ("Medical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview.") (citing *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)); *Self*, 439 F.3d at 1232 ("The subjective component [of deliberate indifference] is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment.").

Defendants argue that Plaintiff has failed to allege "specific facts plausibly showing Defendants are deliberately indifferent" to Plaintiff's mental health problems.  *Motion* [#72] at 18.  According to Defendants, the Second Amended Complaint [#71] suggests that each named Defendant concluded that "Plaintiff does not suffer from mental health issues that would make his placement at the ADX inappropriate."  *See id*.

Plaintiff asserts that his mental health problems, in combination with his "prolong[ed] isolation in the SHU," should preclude his placement in the ADX.  *Second Am. Compl.* [#71] at 15, 17.  Plaintiff further argues that his transfer was "wrong and unnecessary" because he did not "incur any new infraction" after his first ADX transfer was denied.  *Id.* at 13.  Plaintiff alleges that Defendants worked to "undermine" his mental health diagnoses in order to transfer him to the ADX.  *Id.* at 16.  In particular, Plaintiff contends that Defendant Boutwell's "underdiagnosing and misdiagnosing" of Plaintiff's "mental health needs" in order to "accommodate an improper agenda" constitutes deliberate indifference to the psychological harm Plaintiff would allegedly suffer at the

ADX.  *Id.* at 15-16.  Because Plaintiff fails to allege facts that satisfy the subjective component of a deliberate indifference claim, the Court does not address the objective component.

### 1.    Defendant Matevousian

Plaintiff alleges that Defendant Matevousian, "in a spiteful manner," told Plaintiff that he "made some calls, talked to some people, and got them to get rid of that psychological report."  *Second Am. Compl.* [#71] at 16.  Based on this exchange, Plaintiff apparently concludes Defendant Matevousian transferred Plaintiff to the ADX despite Defendant Matevousian's knowledge that Plaintiff's mental health rendered him ineligible for ADX placement.  *Id.* at 15-16.  Defendants respond that Defendant Matevousian's statement to Plaintiff that "you're not crazy" indicates Defendant Matevousian believed Plaintiff lacked a mental health condition serious enough to preclude him from ADX placement.  *Motion* [#72] at 18.

Plaintiff's allegations do not establish that Defendant Matevousian knew of and disregarded an excessive risk to Plaintiff's health, nor do they show that Defendant Matevousian attempted to prevent Plaintiff from accessing the treatment or medical personnel necessary to manage his mental health problems.  *Self*, 439 F.3d at 1231; *Sealock*, 218 F.3d at 1211.  There is no indication that Defendant Matevousian interfered with Plaintiff's ability to meet with psychologists or receive his prescribed medication by transferring Plaintiff to the ADX.  *See Response* [#77] at 22 ("Plaintiff does not intend to allege that his placement at the ADX denies him adequate mental health care.").  Furthermore, the Second Amended Complaint [#71] details at least four instances where

Defendant Matevousian entreated Plaintiff to enroll in the Stepdown Program to receive further mental health treatment.  [#71] at 3-4, 6, 8.[11]

Assuming Defendant Matevousian was responsible for initiating Plaintiff's second ADX referral, the transfer only took place after Plaintiff was psychologically cleared for ADX placement by Defendant Boutwell.  *Id.* at 8-9.  At that point, Defendant Matevousian could not have disregarded an excessive risk to Plaintiff's health because, as far as Defendant Matevousian knew, placement in the ADX did not pose a risk to Plaintiff's mental health.   Defendant Matevousian was not deliberately indifferent to Plaintiff's mental health problems by following the recommendations of a medical professional regarding Plaintiff's mental health.  *See Sherman v. Klenke*, 67 F. Supp. 3d 1210, 1234 (D. Colo. 2014) (finding no deliberate indifference by prison administrator "simply because she declined to override" treatment decisions made by nurse) *rev'd in part on other grounds*, 653 F. App'x 580 (10th Cir. 2016); *cf. Heard v. Sheahan*, 148 F. App'x 539, 540 (7th Cir. 2005) ("Jail administrators . . . are generally entitled to rely on the judgment of medical professionals.").  Therefore, the Court finds that Plaintiff has failed to adequately allege the subjective component of his deliberate indifference claim against Defendant Matevousian.

"Dismissal with prejudice is a harsh remedy, and a court may liberally grant a litigant leave to cure pleading deficiencies."  *Vigil v. Laurence*, 524 F. Supp. 3d 1120,

---

[11]   In his Response [#77], Plaintiff additionally alleges that Defendants "blocked Plaintiff's enrollment in the [Stepdown] Program" sometime in February or March 2016.  *Response* [#77] at 20.  A complaint may not be amended by adding factual allegations in response to a motion to dismiss.  *Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015).  Regardless, this allegation would fail to satisfy the subjective component because Plaintiff does not allege that his mental health treatment outside the Stepdown Program was inadequate.  *See Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006) (holding prisoners do not have a right to a "particular course of treatment").

1131 (D. Colo. 2021).  Although the Court has not previously addressed the merits of Plaintiff's Eighth Amendment claims, dismissal with prejudice is appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."  *Gee*, 627 F.3d at 1186 (citing *Oxendine*, 241 F.3d at 1275).  Plaintiff has already amended his complaint twice, and the underlying facts regarding the subjective component of his deliberate indifference claim are closely related to the facts regarding his First Amendment retaliation claim.  The Court finds that permitting Plaintiff to file a third amended complaint with respect to his Eighth Amendment claim against Defendant Matevousian would be futile.

Accordingly, the Court **recommends** that the Motion [#72] be **granted** to the extent that Plaintiff's Eighth Amendment claim, as asserted against Defendant Matevousian, be **dismissed with prejudice** for failure to state a claim.  *See Reynoldson*, 907 F.2d at 127.

### 2.    Defendant Frandle

Plaintiff alleges that Defendant Frandle "clearly omitted" the fact that Plaintiff's first ADX transfer was denied due to Plaintiff's mental health when Defendant Frandle prepared his Report [#38-1] of Plaintiff's ADX referral hearing.  *Second Am. Compl.* [#71] at 11.  However, Defendant Frandle noted in the Report that the "[p]sychologist provided a memorandum indicating the inmate has no serious mental health issues which would preclude his placement in the ADX control unit."  [#38-1] at 16.  Based on the information available to Defendant Frandle in Defendant Boutwell's Reassessment, placement at the ADX did not pose a risk to Plaintiff's health.  *Self*, 439 F.3d at 1231.  A prison official cannot be deliberately indifferent to a risk to an inmate's health if he is unaware that any

risk exists in the first place.  *Farmer*, 511 U.S. at 837.  The Court finds that Plaintiff has failed to adequately allege the subjective component of a deliberate indifference claim against Defendant Frandle.

As with Plaintiff's claims against Defendant Matevousian, the underlying facts supporting Plaintiff's First and Eighth Amendment claims against Defendant Frandle are closely related.   In light of Plaintiff's previous opportunities to add allegations against Defendant Frandle, the Court finds that permitting Plaintiff to file another complaint against Defendant Frandle would be futile.  *See Gee*, 627 F.3d at 1186 (citing *Oxendine*, 241 F.3d at 1275).  Accordingly, the Court **recommends** that the Motion [#72] be **granted** to the extent Plaintiff's Eighth Amendment claim, as asserted against Defendant Frandle, be **dismissed with prejudice** for failure to state a claim.  *See Reynoldson*, 907 F.2d at 127.

### 3.    Defendant Boutwell

Plaintiff alleges Defendant Boutwell's Reassessment of Plaintiff's ADX referral "underdiagnos[ed] and misdiagnos[ed]" his mental health conditions. *Second Am. Compl.* [#71] at 15.  Rather than being "a fair and objective reassessment," Plaintiff argues Defendant Boutwell's evaluation was "done to undermine" the July 2015 Evaluation and ensure his transfer to the ADX.  *Id.* at 16.  According to Plaintiff, Defendant Boutwell's "bias" is evident based on her failure to personally interview him and her supposed omission of "Plaintiff's prolong[ed] isolation in the SHU."  *Id.* at 17-18.

Defendants contend that Defendant Boutwell's conclusion that there was "no evidence of serious mental illness which would preclude [Plaintiff's] placement at ADX Florence" shows she was not deliberately indifferent to Plaintiff's mental health issues.

*Motion* [#72] at 18.  Defendants further argue that the allegation that Defendant Boutwell acted to "undermine" Plaintiff's diagnoses in the July 2015 Evaluation is contradicted by the fact that Defendant Boutwell "referenced at length" the earlier evaluation in her Reassessment.  *Id.* at 16.

Plaintiff's claim is based on his disagreement with Defendant Boutwell over her diagnosis of his mental health issues.  This disagreement does not give rise to a deliberate indifference claim.  *Perkins*, 165 F.3d at 811; *see also Dawson v. Corr. Healthcare Mgmt., Inc.*, No. 16-cv-02073-CMA-STV, 2017 WL 5990084, at *4 (D. Colo. May 24, 2017) (finding prisoner who disagreed with nurse practitioner's "assessment of the severity of his condition" failed to allege deliberate indifference).  Plaintiff may prefer Dr. Bickart's assessment—that Plaintiff's mental health precludes his ADX placement—over Defendant Boutwell's, but disagreement among healthcare professionals does not constitute deliberate indifference.  *October 2015 Memo* [#71] at 21; *see Sherman v. Klenke*, 653 F. App'x 580, 591 (10th Cir. 2016) (stating that prison doctor's decision to deny surgery twice recommended by other doctor "amounts to nothing more than a difference of professional opinion, which cannot give rise to an inference of deliberate indifference").

Despite Plaintiff's allegations, discussed above, that Defendant Boutwell conducted her Reassessment "to accommodate an improper agenda," there is no evidence of the "extraordinary degree of neglect" required to satisfy the subjective component of a deliberate indifference claim against the treating medical professional.[12]

---

[12]  In his Response [#77], Plaintiff alleges for the first time that Defendant Boutwell failed to follow certain BOP procedures required when assessing an inmate's "eligibility for transfer to a control unit program." [#77] at 27.  These new allegations cannot amend the original complaint. *Abdulina*, 79 F. Supp. 3d at 1206.  Regardless, as Defendants clarify, "the particular methods identified by

*Second Am. Compl.* [#71] at 15; *Self*, 439 F.3d at 1232.   Defendant Boutwell's Reassessment reviewed the July 2015 Evaluation, which evaluated Plaintiff's mental health, including the effects of his time in the SHU.  *See Reassessment* [#71] at 23; *July 2015 Evaluation* [#49] at 15.  Therefore, Defendant Boutwell did not "omit any mention or analysis of Plaintiff's five years in the SHU."  [#71] at 18.  The Court finds Plaintiff has not adequately alleged the subjective component of a deliberate indifference claim against Defendant Boutwell.

As explained above, the Second Amended Complaint [#71] represents Defendant Boutwell's first inclusion in the case as a named defendant.  However, Plaintiff's factual allegations against Defendant Boutwell are nearly identical to his allegations against the "Unknown Psychologist" in the Amended Complaint [#28].   The underlying factual allegations for Plaintiff's First and Eighth Amendment claims against Defendant Boutwell are closely related.  The Court finds that these allegations do not adequately state a plausible claim for Eighth Amendment deliberate indifference by Defendant Boutwell. Permitting Plaintiff a third opportunity to bring allegations against Defendant Boutwell would be futile.  *See Gee*, 627 F.3d at 1186 (citing *Oxendine*, 241 F.3d at 1275).

Accordingly, the Court **recommends** that the Motion [#72] be **granted** to the extent Plaintiff's Eighth Amendment claim, as asserted against Defendant Boutwell, be **dismissed with prejudice** for failure to state a claim.  *See Reynoldson*, 907 F.2d at 127.

---

Plaintiff are not listed as prerequisites for the type of review performed by Dr. Boutwell." *See Reply* [#79] at 10-11 (citing BOP Program Statement 5212.07, "Control Unit Programs" (Feb. 20, 2001), https://www.bop.gov/policy/progstat/5212_007.pdf; BOP Program Statement 5100.08, "Inmate Security Designation and Custody Classification" (Sept. 4, 2019), https://www.bop.gov/policy/progstat/5100_008cn.pdf).

### 4.    Claim Against Defendant BOP

A prisoner alleging a deliberate indifference claim must show that the actions of prison officials were "taken in bad faith or for no legitimate purpose," rather than mere negligence.  *Whitley*, 475 U.S. at 322.  This standard "mandates inquiry into a prison official's state of mind."  *Wilson*, 501 U.S. at 299.  Therefore, "an institution cannot have the 'culpable state of mind' required for liability on this type of claim."  *Hall v. Shumard*, No. 15-cv-01949-RBJ-MTW, 2017 WL 694589, at *3 (D. Colo. Feb. 21, 2017) (finding prisoner's deliberate indifference claim inadequate as alleged against BOP itself).  The Court finds that Plaintiff fails to adequately allege the subjective component of a deliberate indifference claim against Defendant BOP because he fails to adequately allege such a claim against any of the specific prison officials named in the Second Amended Complaint [#71].  Based on the Court's recommendation that Plaintiff's Eighth Amendment claims against all other defendants be dismissed with prejudice, the Court concludes that granting Plaintiff leave to amend his Eighth Amendment claim against Defendant BOP would be futile.  *See Gee*, 627 F.3d at 1186 (citing *Oxendine*, 241 F.3d at 1275).

Accordingly, the Court **recommends** that the Motion [#72] be **granted** to the extent Plaintiff's Eighth Amendment claim, as asserted against Defendant BOP, be **dismissed with prejudice** for failure to state a claim.  *See Reynoldson*, 907 F.2d at 127.

### C.    Fifth Amendment

Plaintiff alleges that the "underdiagnosing and misdiagnosing" of his "mental health needs" was done to "accommodate an improper agenda," thus constituting a "due process" violation.  *Second Am. Compl.* [#71] at 15.  Plaintiff additionally alleges his

transfer to the ADX "artificially inflated" the length of time he has spent in segregated confinement. *Id.* at 19. Although Plaintiff provides no more specificity than the phrase "due process" as the basis for his claim, he brings allegations against federal defendants that appear to contest the procedures surrounding his transfer to the ADX. For example, Plaintiff alleges that Defendant Matevousian was "pulling strings" to facilitate Plaintiff's "wrong and unnecessary" placement in the ADX. *Id.* at 8, 13. Plaintiff further alleges that Defendant Frandle "clearly omitted" information from the Report that would have prevented the transfer. *Id.* at 18, 11. Finally, in his Response [#77], Plaintiff contrasts the "fair procedures" in his first ADX referral with the "suspect and unreliable" methods employed by Defendant Boutwell in her reassessment of his ADX eligibility. [#77] at 28. Therefore, construing Plaintiff's allegations liberally, Plaintiff's claim can be addressed as a Fifth Amendment procedural due process claim challenging his transfer from the SHU at Atwater to the ADX, which allegedly extended Plaintiff's segregated confinement.[13]

To determine whether a plaintiff has been deprived of his right to procedural due process, "courts must engage in a two step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process." *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1135 (10th Cir. 1994). The requirement that a plaintiff must have a protected interest—here, a liberty interest—is the initial question to be resolved. Thus, "[i]n order to determine whether a due process violation has occurred, the Court

---

[13]  To the extent that Plaintiff invokes due process to challenge alleged deliberate indifference to his mental health, the Court has analyzed those claims under the Eighth Amendment. *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) ("Where constitutional protection is afforded under specific constitutional provisions, alleged violations of the protection should be analyzed under those provisions and not under the more generalized provisions of substantive due process.").

must first address whether [the] allegations establish that [the plaintiff has] a protected liberty interest." *Allen v. Clements*, 930 F. Supp. 2d 1252, 1264 (D. Colo. 2013). "In the prison context, the due process clause safeguards 'only a narrow range of protected liberty interests.'" *Id*. (quoting *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012)).

### 1. Liberty Interest

When assessing the existence of a prisoner's asserted liberty interest, "prison conditions that 'impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' may create a liberty interest protected by the Due Process Clause." *Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The "atypical and significant hardship" test applies when a prisoner faces a "transfer to harsher conditions of confinement" or "prolonged placements in administrative segregation." *Rezaq*, 677 F.3d at 1011, 1016. The Tenth Circuit considers four nondispositive factors when determining whether a prisoner faces an atypical and significant hardship. *See, e.g.*, *Gowadia v. Stearns*, 596 F. App'x 667, 673 (10th Cir. 2014) (citing *Rezaq*, 677 F.3d at 1012). These factors include whether: "(1) the treatment relates to and furthers legitimate penological interests; (2) the conditions complained of are extreme; (3) the treatment increases the duration of confinement; and (4) the treatment is of indeterminate length." *Id*. While these factors help guide the constitutional analysis, the question of whether a liberty interest exists is ultimately a "fact-driven assessment that accounts for the totality of conditions presented by a given inmate's sentence and confinement." *Rezaq*, 677 F.3d at 1012.

To satisfy the first factor, there need only be a "reasonable relationship" between an inmate's ADX placement and the relevant penological interest.  *Gowadia*, 696 F. App'x at 673 (quoting *Rezaq*, 677 F.3d at 1014).   An inmate's placement in segregated confinement out of concern for the safety of other inmates constitutes a legitimate penological interest.  *Rezaq*, 677 F.3d at 1013; *see also McAdams v. Wyo. Dept. of Corr.*, 561 F. App'x 718, 721 (10th Cir. 2014) (finding legitimate penological interest for placing inmate in long term administrative segregation due to "history of serious infractions," including alleged assault on another inmate).  Based on Plaintiff's history of violence, the July 2015 Evaluation recommends Plaintiff "be housed in a maximum security environment in order to maintain the safety and security of the general inmate population." *See July 2015 Evaluation* [#49] at 17-18.  Plaintiff protests that his placement in the ADX does not further a legitimate penological interest because he did not "incur any new infraction" while working as an SHU orderly in the approximate time period between his first and second referrals to the ADX.   *Second Am. Compl.* [#71] at 13.   However, Defendants were free to consider Plaintiff's criminal history, disciplinary record, and mental health when assessing his ADX transfer, rather than limiting themselves to Plaintiff's preferred portion of his record.   *See Rezaq*, 677 F.3d at 1013 (noting that disciplinary and nondisciplinary factors, including institutional safety and underlying criminal conduct, are valid justifications for imposing segregated confinement). Therefore, the Court finds that the first factor weighs against finding a protected liberty interest.

As to the second factor, the Tenth Circuit has already established that the conditions at the ADX, while "undeniably harsh," are not atypically extreme.  *See Rezaq*,

677 F.3d at 1014-15; *Jordan v. Fed. Bureau of Prisons*, 191 F. App'x 639, 652-53 (10th Cir. 2006) (finding that conditions at the ADX do not impose an atypical and significant hardship); *see also Gowadia*, 596 F. App'x at 673 (finding incarceration in an ADX "specialty unit" not extreme because inmate did not assert that his confinement differs from that of general population ADX prisoners). Therefore, the Court finds that the second factor weighs against finding a protected liberty interest.

Regarding the third factor, there is no indication that Plaintiff's placement at the ADX increases the duration of his confinement. Plaintiff argues that Defendants' actions have increased the duration of his time in *segregated* confinement, but not the duration of his *total* confinement in prison. *See Response* [#77] at 34. Thus, Plaintiff's concerns relate more closely to the fourth factor, discussed below. Therefore, the Court finds that the third factor weighs against finding a protected liberty interest.

The fourth factor is whether the treatment is of indeterminate length. Plaintiff alleges that, between his time in the Atwater SHU and the ADX, he has been held in segregated confinement for over eleven years. *Response* [#77] at 25. Plaintiff further asserts that this far exceeds the "60 months that prisoners usually receive in the control unit for killing another prisoner." *Second Am. Compl.* [#71] at 19. An extended duration in segregated confinement may constitute an atypical and significant hardship. *Trujillo*, 465 F.3d at 1225 (reversing dismissal of prisoner's due process claim alleging that he spent over 750 days in segregation when prisoners with more serious infractions usually received fewer than 180 days); *see also Silverstein v. Fed. Bureau of Prisons*, 704 F. Supp. 2d 1077 (D. Colo. 2010) (finding liberty interest in avoiding indefinite stay in

segregated confinement, but no interest in avoiding transfer to the ADX from other similar facility).

However, "duration is properly considered in tandem with indeterminacy." *Rezaq*, 677 F.3d at 1016 (citing *Wilkinson v. Austin*, 545 U.S. 209, 225 (2005)).  A critical part of the determination of whether the treatment is indefinite is whether the conditions are subject to periodic review.  "In *Rezaq* [the Tenth Circuit] explained that prisoners confined at ADX are provided with periodical reviews of their placement in which they have a number of procedural protections, including the opportunity to participate and a right to appeal." *Gowadia*, 596 F. App'x. at 673.  Plaintiff does not allege that he has been denied these periodic reviews.[14]  Therefore, the Court finds that the fourth factor weighs against a liberty interest.

The Court finds that the totality of these factors weighs against finding that Plaintiff has a liberty interest in avoiding placement at the ADX.  Nevertheless, in light of the concerns raised regarding the allegedly disproportionate duration of Plaintiff's time in segregated confinement, the Court assumes, *arguendo*, that Plaintiff has a protected liberty interest and proceeds to the question of whether he received adequate process.

## 2.    Adequate Process

---

[14]  Plaintiff alleges in the Response [#77] that he did not receive a "hearing for ADX G.P. [General Population] Placement, a hearing that every ADX G.P. inmate is and was entitled to have."  [#77] at 35.  It is unclear whether this hearing is the same as the periodic review discussed in *Rezaq*. Regardless, this factual allegation is raised for the first time in the Response [#77], and the Court therefore may not consider it as part of its adjudication of the merits of Plaintiff's claims under Rule 12(b)(6).  *See Abdulina*, 79 F. Supp. 3d at 1206.  The Court notes Defendants' additional argument that Plaintiff's allegation that he was denied an ADX G.P. Placement hearing may fail because he did not "grieve the claim administratively" before including it in a pleading.  *Reply* [#79] at 13.

Prisoners "already have their liberty limited in significant ways by the mere fact of being incarcerated." *Silverstein*, 704 F. Supp. at 1093 (citing *Sandin*, 515 U.S. at 485). Therefore, within "the traditional framework governing due process, a relaxed set of procedures satisfie[s] an inmate's challenge to a placement decision or conditions of confinement." *Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1344 (10th Cir. 2007) (citation omitted) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); and *Wilkinson*, 545 U.S. at 225-27). To provide due process to a prisoner, the government must allow: "(1) a sufficient initial level of process, i.e., a reasoned examination of the assignment; (2) the opportunity for the inmate to receive notice and respond to the decision; and (3) safety and security concerns to be weighed as part of the placement decision." *Estate of DiMarco*, 473 F.3d at 1344 (citing *Wilkinson*, 545 U.S. at 226-27).

Plaintiff challenges the process he received surrounding his transfer to the ADX and the extension of his time in segregated confinement. *Second Am. Compl.* [#71] at 8-11, 19. As explained above, the concerns raised by Plaintiff's Second Amended Complaint [#71] relate to the allegedly disproportionate amount of time he has served in segregated confinement, both in the Atwater SHU and the ADX, for his role in the death of his cellmate. *Id.* at 19. Importantly, as explained below, Defendants Frandle and Boutwell participated only in the procedures surrounding Plaintiff's transfer to the ADX, whereas Defendants Matevousian and BOP participated in both Plaintiff's transfer to the ADX and the total duration of his placement in segregated confinement.

### a. ADX Transfer

The Court finds that Plaintiff's transfer from the Atwater SHU to the ADX satisfies *DiMarco*'s three requirements for adequate process. First, Defendants ensured a

"reasoned examination of the assignment" by evaluating Plaintiff's record and the reasons for his transfer to the ADX. *See Report* [#38-1] at 16-19. Second, Plaintiff received notice, both in advance of his ADX referral hearing and a copy of the Report afterwards. *Id.* at 15, 20. Plaintiff additionally had ample opportunity to respond to his ADX referral. Plaintiff alleges that he had the opportunity to provide a statement and call witnesses at the ADX referral hearing. *Second Am. Compl.* [#71] at 9-10. The Report notes that Plaintiff also had the right to appeal the Report's findings to the Regional Director's Office. *Report* [#38-1] at 19. Finally, Defendants appropriately weighed security interests when deciding whether Plaintiff's placement at the ADX was necessary. *See Silverstein*, 704 F. Supp. 1077 at 1095; *Wilkinson*, 545 U.S. at 228 ("[C]ourts must give substantial deference to prison management decisions before mandating additional expenditures for elaborate procedural safeguards when correctional officials conclude that a prisoner has engaged in disruptive behavior."). The Court concludes that Plaintiff received adequate process prior to his transfer to the ADX. Defendants Frandle and Boutwell participated only in Plaintiff's transfer to the ADX, not his overall hold in segregated confinement. Because Plaintiff's transfer, in and of itself, raises neither a liberty interest nor procedural concerns, the Court finds that allowing Plaintiff to amend his Fifth Amendment claim against Defendants Frandle and Boutwell would be futile. *See Gee*, 627 F.3d at 1186 (citing *Oxendine*, 241 F.3d at 1275).

Accordingly, the Court **recommends** that the Motion [#72] be **granted** to the extent Plaintiff's Fifth Amendment claim, as asserted against Defendants Boutwell and Frandle, be **dismissed with prejudice** for failure to state a claim. *See Reynoldson*, 907 F.2d at 127.

### b.    Duration of Time in Segregated Confinement

Plaintiff's initial placement in segregated confinement occurred in 2011, after he killed his cellmate.   *Second Am. Compl.* [#71] at 12.   Relating to the first *DiMarco* requirement, Plaintiff does not allege that he was denied a sufficient initial level of process when he was placed in the Atwater SHU after the altercation with his cellmate.  As for the second requirement, Plaintiff does not allege that he was denied periodic opportunities to review his segregated confinement while in the SHU, although he alleges that Defendant Matevousian threatened that Plaintiff would "be held in the SHU indefinitely" if he did not enroll in the Stepdown Program.  *Id.* at 3-4.  Further, Plaintiff does not allege that he was denied "periodic and meaningful reviews" of his placement at the ADX.  *Estate of DiMarco*, 473 F.3d at 1344; *see also McMillan v. Wiley*, 813 F. Supp. 2d 1238, 1249 (D. Colo. 2011) (finding annual reviews of prisoners' placement at the ADX satisfied *DiMarco*'s due process requirements).  As explained above, the primary due process concern raised in the Second Amended Complaint [#71] is that Defendant Matevousian's alleged referral of Plaintiff to the ADX "artificially inflated" Plaintiff's time in segregated confinement to more than double the amount of time an inmate would normally receive for killing another prisoner.  *Id.* at 19.  In light of the security concerns prioritized by the third *DiMarco* requirement and deference extended to prison officials by courts, Plaintiff's extended placement in segregated confinement is not a due process violation per se.  *See Silverstein*, 704 F. Supp. 2d at 1095 ("No case has held that prisoners have an absolute entitlement to the eventual release from solitary confinement.").  The Court concludes that Plaintiff fails to sufficiently allege that he did not receive adequate process during his time in segregated confinement.

On its own, Plaintiff's allegation that he has spent a disproportionate amount of time in segregated confinement does not adequately allege a Fifth Amendment due process claim. *See Second Am. Compl.* [#77] at 19. However, Plaintiff may be able to provide further allegations relevant to the process he received in the Atwater SHU or the ADX that state a plausible due process claim. To sufficiently plead such a claim in a third amended complaint, Plaintiff must first allege that his ongoing placement in segregated confinement implicates a liberty interest. The fourth factor of a liberty interest analysis— whether an inmate's hold in segregated confinement is indeterminate—is relevant to Plaintiff's allegation that he was denied an ADX General Population hearing. *Response* [#77] at 35. Courts within the Tenth Circuit have repeatedly held that an inmate's stay at the ADX is not indeterminate, and therefore does not implicate a liberty interest, so long as the inmate receives the required annual reviews of his ADX placement. *See, e.g.*, *Rezaq*, 677 F.3d at 1016; *McMillan*, 813 F. Supp. 2d at 1248. Second, Plaintiff must allege that he has not received adequate process, especially if Defendants BOP or Matevousian denied Plaintiff "periodic and meaningful reviews" of his continued placement in segregated confinement. *Estate of DiMarco*, 473 F.3d at 1344; *see also Silverstein*, 704 F. Supp. 2d at 1094 ("Notice of the factual basis underlying one's segregated confinement and a fair opportunity for rebuttal 'are among the most important procedural mechanisms for purposes of avoiding erroneous deprivations' of liberty interests.") (quoting *Wilkinson*, 545 U.S. at 225-26). Again, the standard annual reviews conducted at the ADX satisfy this requirement. *See Estate of DiMarco*, 473 F.3d at 1344 (finding meetings reviewing placement where inmate could attend and make objections provided adequate process). To summarize, in order to survive a future motion to dismiss by Defendants, any amended

due process claim by Plaintiff must adequately allege some deficiency in the procedural protections afforded to him while in segregated confinement.

Based on the foregoing, the Court **recommends** that the Motion [#72] be **granted** to the extent Plaintiff's Fifth Amendment claim, as asserted against Defendants Matevousian and BOP, be **dismissed without prejudice** for failure to state a claim.  *See Gee*, 627 F.3d at 1186 (stating that "ordinarily the dismissal of a *pro se* claim under Rule 12(b)(6) should be without prejudice, and a careful judge will explain the pleading's deficiencies so that a prisoner with a meritorious claim can then submit an adequate complaint") (citations omitted).

### IV.  Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#72] be **GRANTED**.

IT IS FURTHER **RECOMMENDED** that Plaintiff's First and Eighth Amendment claims be **DISMISSED with prejudice** for failure to state a claim.

IT IS FURTHER **RECOMMENDED** that Plaintiff's Fifth Amendment claims against Defendants Frandle and Boutwell be **DISMISSED with prejudice** for failure to state a claim.

IT IS FURTHER **RECOMMENDED** that Plaintiff's Fifth Amendment claims against Defendants Matevousian and BOP be **DISMISSED without prejudice** for failure to state a claim.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is

assigned.    A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999; *Talley v. Hesse*, 91 F.3d 1411, 1412-12 (10th Cir. 1996).    A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Reap Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: June 13, 2022

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge